Richard Rubin on behalf of the appellants Greystone and U.S. Homes. Your Honor, this appeal deals with the Which case are you arguing? That's a good question. I'm arguing our appeal and if the appeal on the subsequent owner's issue on arbitration, if you also want me to address the cross appeal, which deals with jurisdiction, I can do that at the same time or wait and do that. I'm talking about that case and the mandamus case. I thought the mandamus case was second, but if we want to go there. Oh, I thought we were doing the mandamus. I just want to know which one you're arguing. I was arguing the appeal, but if you prefer. The numbers I gave you, I think, are the mandamus. Then I apologize and I'll grab my other notebook. That's all right. Maybe I'm wrong. These got reversed in the sense of where I originally had them. I would. Does the panel have a preference as to whether we're here with the mandamus or the arbitration first? I just want to know which one we're doing. Arbitration's fine. I'm sorry. It was my mistake, as you were. They got reversed on my sheet up here. I know we're here. There's a number of issues. Your Honor, the issue in our appeal is simply about the validity of the district court's order denying the right to compel arbitration against subsequent homeowners. We think there's two fundamental errors. The first one is a procedural error, that the court considered the issue sua sponte, without prior notice to the developers, my clients. Well, could you – but there was a motion to dismiss pending, right? There was, but the motion to dismiss was denied entirely because the court found that the complaint was pled properly. At the hearing, the counsel representing the developers, when the issue was first raised about subsequent homeowners, his first comment was he didn't understand the question because the motion on its face was limited to original homeowners only, and the only evidence we presented were the contracts because that was a contractual issue. But at some point, the district court alerted the parties to the fact that he was going to reach the issue as to subsequent homeowners, didn't he? And the motion to compel was then granted in part, presumably because he perceived it as granted as to original purchasers, denied as to subsequent purchasers. That's one way to decipher what happened in the court below. It is hard to decipher. I think originally, during the hearing, he said he wasn't going to address it, and then he clearly said at the end he was. But the point is that we were not given the opportunity to present any evidence because we didn't know that the issue was coming up. He decided it on the basis that it was not a covenant running with the land. That was his decision. And he cited a California Court of Appeal decision saying that an arbitration provision in recorded CC&Rs do not run with the land and does not matter and, therefore, not binding. A couple months later, the California Supreme Court overruled, expressly overruled that decision and said, in fact, that an arbitration provision in recorded CC&Rs does bind subsequent homeowners. And the court said that has to be the result because, otherwise, why would any provision in CC&Rs bind subsequent homeowners? And if you think about it, think of what the question would be. If the homeowners associations are correct, no one knows in recorded CC&Rs what does and what doesn't bind subsequent homeowners. It would be an unknown question, and the parties at their peril would have to try to sort that out as they went. Well, once you get a ruling that arbitration clauses do or do not, then you don't have to worry about sorting it out. You just know they either do or do not. Well, on that issue, but what about the rest of the issues? Because that's what the clinical says. I mean, I used to teach this stuff, not arbitration clauses, but I taught property for 10 years, and the run with the land problem was always a little bit vexing. And once I got an answer from the court, then I knew. On that issue, sure you do. But what about the covenants? I'm sorry, CC&Rs are multiple pages, and you don't know about the rest of it. But look at what the result of that is. If the court concludes that the arbitration provision is the only provision in the CC&Rs that don't run with the land, then you're violating Pinnacle – I'm sorry, Concepcion. Because Concepcion says you have to treat arbitration provisions the same as you treat every other provision in a contract, and the express reason that the district court found here was this is an arbitration provision. We're not going to enforce it. That's different than the rest of the provisions in the CC&Rs. That's exactly what Pinnacle said you don't do. Yeah, well, we had one dissent, Justice Kennard. We had Justices Wertiger and Lew saying, you know, maybe this is not a contract, this is CC&R. I mean, I read Pinnacle, and it says it holds as you say it holds. But it's California law. It is. One possibility that occurs to me is certifying the question to the Nevada Supreme Court. Well, and I think that is an alternative. Because the Nevada Supreme Court basically has held that it is very important to find out these kind of issues under Chapter 40. And so that is an alternative, because we don't have the decision under California law – I'm sorry, Nevada law, and I acknowledge that. The reason California law comes up is because that's expressly what the district court relied on. Sure. And that's the only case the district court relied on. And if you look at the substance of California law and Nevada law on these issues, they're pretty similar. They both, for example, provide that the selling homeowner has to expressly give notice of the CC&Rs and give a copy of the CC&Rs to the buying homeowner. They're very similar in that regard. Back to the procedural issue, the sua sponta issue. During the hearing, Mr. King, on behalf of the developers, said, Your Honor, look, we could present evidence on this if we had known that that was going to happen. Because covenants running with the land, the two primary issues are notice and intent. Notice is a non-issue here, because the recordation of the CC&Rs provides the notice. So the question is intent. And it would come down to the developer's intent when the CC&Rs were recorded. We never had a chance to present that evidence. As a matter of fact, this case was at such a preliminary stage, we never had a Rule 26 conference. There was no discovery. And, again, had we had notice, we would have been able to obtain declarations and put that forward. The only evidence that came in on the motion to compel arbitration, as I said before, was the contracts, the purchase agreements, from the developer to the owners, because that was a contractual issue. And so it was different, and we didn't have the opportunity. I'm not suggesting that your client or the lawyers in this case made a mistake, but it occurs to me to wonder why did you move initially only against the original owners? And here's why. Because we hadn't had discovery. We had no depositions. But, of course, you had the CC&Rs. I mean, you moved over. We had the CC&Rs, but we thought that the issue with respect to the original developers was very simple. It's on the contract. There's a contractual relationship there. Honestly, we thought we weren't going to lose. With the other, we thought, remember, my client's not the developer that recorded the CC&Rs. They're the successor developer. So we would have to obtain evidence from the original developer, and we would need some discovery to do that. In other words, we would have taken the deposition of those people. We hadn't had that opportunity yet. And so we decided we will make that motion, and we said at the hearing, my co-counsel said at the hearing, we will then bring a subsequent motion on the subsequent purchasers on the issue of arbitration. And so we think that issue is clearly alive and that district court made a mistake. Well, given that Nevada hasn't ruled on this issue, and it may very well go by way of Pinnacle, and it may not do so, and certification is on the table as an option, what would you be asking for in this case? Certification, hold other issues in abeyance, go back to the district court? We would ask for either. Either that this rent be granted. I'm sorry, that the appeal be granted. I'm confusing myself. And that the issue be decided here. Or we would accept sending it to the Nevada Supreme Court, because we acknowledge, we can't help but acknowledge, that the court has not addressed this issue. And getting a ruling from the Nevada Supreme Court would then settle the matter. Is there enough evidence now in the record? I understand you thought there wasn't enough and not enough opportunity to argue in the district court. But is there enough now in the case that the question of the obligation of the subsequent purchasers under the CCNR to arbitrate, is there enough now that we can certify? The record is what the record is. That hasn't changed. But the reason I'm asking the question is, you're saying the district judge didn't have enough for him to decide the question. But I'm now hearing you say, but we can now send it to the Nevada Supreme Court to decide that question. And we're okay with it going the way it is, in other words, the way the record is. But the answer to your precise question is this. As you know from the various things in front of you, the district court basically concluded, wrongly we think, that every issue in the complaint has been resolved. We don't think that's right. That will come up during the writ. But secondly, the district court on an unrelated motion granted our motion to dismiss the counterclaims. So no discovery has still ever happened. There still has never been a Rule 26 conference in this case. So if you're asking, has more facts been developed so that we have a more developed opportunity to present material, the answer is no, nothing has happened in that regard since the original motion. Do we have all the relevant CC&Rs? We've got two separate developments here. We do. Do we have the CC&Rs for both developments? No, you don't, for this reason. There are no CC&Rs in one of the developments. In the smaller Fiesta development, there are no CC&Rs. So as to that one, you're stuck with the contract. It's all you've got. No, because we think we can still prove covenant running with the land. It's still about notice and intent, and we never had the opportunity to present facts. In terms of having a covenant running with the land, with respect to that development, the only piece of paper you have is the contract? Yes, but we would want to develop that record because, for example, as I indicated, in Nevada, a selling homeowner has to notify and provide this ‑‑ I'm sorry, I'm mixing myself up. Yeah, we would want to present evidence that there still is notice and intent and that for the Fiesta development that we can prove a covenant running with the land, but we have to do that without CC&Rs. The larger development, the Anthem development, is the one that has the CC&Rs with the provisions we're talking about, and we think Pinnacle is directly on point, although obviously we acknowledge it's from California. Okay. I assume you want me to hold my argument in response to their cross appeal. Why don't we hear from them, and then you've got some time. That's fine. We'll go from there, and if we need some sort of rebuttal, we'll need some sort of rebuttal. That's fine. Thank you very much. Morning. Excuse me. Randall Jones on behalf of the associations, and I hate to start a presentation this way, but first of all, I'd like to apologize to the Court for our tardiness this morning. I hope I did not cause any inconvenience to the Court over that, and I apologize. Having said that, excuse me, may it please the Court, in addressing the first issue raised, and really the real issue, as I understand it, from the appellant, the developers, that they would like the subsequent or the rule or the order dismissing actually judgment, dismissing the subsequent purchasers reversed and remanded. I, we believe that the more fundamental question is, is whether or not there is standing in the first instance with respect to the subsequent purchasers or the original purchasers, and this issue, I think, somewhat addresses the point that has been raised by Judge Wynn about notice and whether or not the developers were on notice. And I think it's at page 15 of our original brief where there's a reference in the record to a number of things that indicate that the developers were not only on notice, they were the parties that were bringing this action and referenced specifically. And it's at page 15 of the answering brief, and we've highlighted it there, the quote from the complaint, where the arbitration agreements are covenants running with the land and are therefore enforceable against all subsequent purchasers of the property that are subject to the arbitration. And, moreover, and probably more importantly as it relates to this subject or this issue, is that the developers knew by the time we filed our original motions to dismiss that we were bringing this issue before the Court. And, again, importantly ---- Kennedy. I raised that tangentially, at least, with Mr. Rubin, but he says the Court denied the motion to dismiss. It did. But in terms of this issue having been raised, certainly the developers were on notice that we had brought this issue before the Court. No, in terms of a motion to dismiss. But, you know, his complaint was converted to a motion for summary judgment. He didn't have a chance to introduce his evidence. Well, from our perspective, Your Honor, we believe they simply ignored that evidence that was presented to them. And we discuss where we talk about on the record and reference the record in the motion hearings where we brought these issues up before the Court. And on page 16, we talk about evidence presented in the form of affidavits and title reports showing no agreement between the developers. Well, but it's up to the Court, you know, under the rules, to let the lawyers know, well, I'm going to convert this into a motion for summary judgment because I have affidavits from the defendants. So how many days do you need to file yours? The Court didn't do that, right? The Court did not do that specifically. Having said that, what the Court did do is tell these developers that you have pled inconsistent claims of jurisdiction. Your complaint in count two says essentially asks for declaratory relief to the effect that the association has no standing to represent these homeowners. So they bring it up themselves. That is a direct contradiction of the minimum jurisdictional pleadings required in Federal Rule 8A. So they start out the process by saying we don't think they have jurisdiction. And then the bigger point is. But, you know, this is not plaintiff standing. You're saying the defendants don't have standing. Certainly. Now, that sounds as though that's not quite an Article III question. It's the defendants. It almost sounds like a Rule 19 motion, like you're supposed to bring in the actual homeowners. I'm a little confused by this being an Article III argument. Well, Judge Fletcher, here's, I think, the important point. As you know, and as this Court has held time and again, as has the United States Supreme Court, jurisdiction is a matter of constitutional authority. And under Article III, jurisdiction can be brought up at any time. We referenced a number of cases, including Snell v. Cleveland, that says subject matter jurisdiction is never waived. It can be brought up at any time. And if the courts don't have Article III jurisdiction, then they have an obligation, and under essentially Rule 12H3, to dismiss the complaint. So here's the problem that the developers have. In addition to the inconsistency with their pleadings, under the Hunt v. Apple State case, they cannot satisfy the third prong of the Hunt case, which essentially says that neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. In this case, the individual members of the lawsuit, excuse me, the individual homeowners are the target of essentially this arbitration, if it ever went through. And think about this. How can they not be required to participate as members of the lawsuit? The other argument you're going to hear on the writ is they want to do all these inspections of their homes, of the homes, not the association. Associations don't own homes. So they want to go and inspect all of these homes. They want to take their depositions, presumably, in the arbitration proceedings. They want to compromise, if the arbitration is allowed and the CC&Rs are effective, they want to compromise our clients, the homeowners, not our clients, actually, the members of our clients, their Chapter 40 rights. These are very, very important and unique rights under a statutory scheme in the state of Nevada. So they have to be implicated. And Judge Jones told them at the first hearing, look, you've got to be careful. You can't have your cake and eat it, too. You cannot say with the one hand these associations have no jurisdiction, while on the other hand saying, well, just in case, we want to aggregate all these claims under the association and hold them liable or essentially coming within the umbrella of the CC&Rs. So we believe that – What do we have in the various papers, maybe it's in the CC&Rs, maybe it's in something else, that outlines the relative responsibilities of the homeowners association vis-à-vis the individual homeowners? Because it seems to me it's conceivable, in the sense it would be legally possible, that the homeowners had entered into an agreement with the homeowners association that it would serve as the defendant in a case like this. Is there anything in the papers, CC&Rs, anything else that we could construe or the district court could construe as giving the homeowners association the authority to represent them, represent the homeowners? Well, Judge, you actually raise, I think, a critical point. Under Nevada law, we believe, and I think Judge Jones actually held this, that while the federal courts under Article III don't have jurisdiction, subject matter jurisdiction under Hunt, the state courts may. We believe – in fact, that's why we assert it. I don't want to come up here and suggest that we weren't asserting the association's head right to represent these homeowners individually in federal court. We did. But we lost that argument. And Judge Jones wrote an opinion that said, here's why you lost it. So we certainly took that position. Having said that, we now believe, and the Nevada law is clear on this, that we can pursue those claims in state court in a representative capacity, which we cannot do because of Article III in federal court. So there is an issue here that can be addressed. And by the way, presumably, the developers could theoretically make the same argument they're making in this court as it relates to both the original purchasers and the subsequent purchasers in state court, if the homeowners associations brought these claims in state court. Speaking of making the argument in state court, what's your position on whether or not this question on whether CC&R is buying subsequent purchasers should be certified to the Nevada Supreme Court? That certainly is, I think, an option. I think it is an option, assuming, for the argument's sake, that there is Article III standing for the association to bring these claims. That would be a way to address this issue and get rid of this question that the federal courts would have to wrestle with, what would Nevada do? But I think the answer actually is fairly straightforward. If you look at Pinnacle, and I certainly, as you might expect, disagree with my colleague, Ms. Rubin, with respect to whether Nevada would follow Pinnacle. We absolutely do not believe it would, and I'll tell you a number of reasons why. First of all, the FAA was really not implicated in that appeal. The FAA was presumed because it was not brought up in the lower court, so that the California Supreme Court didn't have to wrestle with this question of interstate commerce. It was a given. More importantly, we believe, if you read that case, that the case was essentially decided by the California Supreme Court saying, look, irrespective of FAA, we have to rule in favor of the CCNRs being subject to this arbitration clause because the Davis-Sterling Act requires us to do so. The Davis-Sterling Act is not, there is no analog in Nevada law for the Davis-Sterling Act. That is a unique tenet of California law, which we believe to be very different, very different, fundamentally different than Nevada law. And as you all know, this is an eerie case, diversity case. So this court needs to apply the substantive law of the state of Nevada. And if you look at Nevada law, there's a number of reasons why we believe that the Nevada courts would not follow this case. One is in terms of the difference. There is these arbitration agreements and the dispute resolution provisions within them. There's about four pages here. They essentially gut a homeowner's Chapter 40 rights. The Nevada Supreme Court has written time and again about the importance of those rights and our legislature's recognition of those rights of a homeowner in the state of Nevada and the uniqueness and the importance of those rights. This arbitration agreement guts those. It gives all of the good stuff of Chapter 40, the Nevada statute, to the developer, but strips the homeowner of all the good things for the homeowner. For instance, the recovery of attorney's fees, the recovery of the cost of suit, which in these cases can be substantial. There are other important rights that a homeowner has under Chapter 40 as well. More important, or as importantly, under NRS 116.3102 sub 2, it limits that statute, which is our common interest association statute, that limits an association's statutory privileges, and they do not include references to arbitration. So we have our statutory scheme both under Chapter 40, the case law, and under Chapter 116 is fundamentally different than in California, and under Erie you cannot look at California law to see how it would be applied. There are other related issues to the subsequent Purchaser argument that I could get into as well with respect to these issues of running with the land that you referenced, Judge Fletcher, why we believe this does not touch and concern the land, Nevada law and the beneficial use that is different than California. All of these issues are contained in our brief, and I see I'm running out of time, but I did want to raise one other issue before I sit down. In our cross-appeal, in addition to the subject matter jurisdiction argument, which we think certainly has to be looked at by this Court and is a fundamental problem for them under any circumstances, but even if you look at the subsequent Purchaser argument, there are so many reasons, including intent. Just so you all know before I sit down, the declarant is not these developers. The declarant is a company called Dell Web. They recorded the Master Association CC&Rs, not these parties that are the appellants. So they can't speak to the intent because they were not the party recording those documents. And, by the way, under Nevada law, again, Nevada statutes, they talk about this issue of, excuse me, the special declarant, that they have an affidavit that said we're the special declarant. The Nevada law, NRS 116.3104, requires a written instrument be recorded in the county where the association has property, indicating that they are the special declarant. There is no such documentation in this case. So there are this issue of intent, running with the land, again, for reasons that are further flushed out in our brief, does not apply to these developer parties. The last point I want to make is with respect to the judgment itself. Under the FAA, assuming the FAA applied to this case, under FAA section, I believe it's two, it should have been an order. We don't know why Judge Jones decided to make it a judgment, but it should have been an order. There is now a judgment out there in this case against these homeowners, essentially the association, but affecting all these homeowners. And there's been some discussion in the briefs about, well, so what, we're not doing anything about it. The developers are saying, we're sitting on it, it's not a big deal. It is a big deal. It is an extremely important issue for our clients. We believe that the law requires that an order be entered, not a judgment. And under any circumstances, we think that there needs to be a, this Court needs to vacate that judgment in order that an order of compelling arbitration be entered. Assuming this Court finds that there's any basis to order any arbitration or any party to arbitration, in spite of the fact that we don't believe that the associations now, according to Judge Jones, have standing to represent those associations. And if you have any other questions, otherwise, thank you. Roberts. Thank you. Response. Your Honor, thank you. I want to respond to a few things and then present our position regarding standing. We cited in our brief the Portland Druggist case, which talks about the quote, unquote, primary vice of converting a motion to an offensive summary judgment motion without prior notice. Yes, Judge Jones talked about it during the hearing, but he never talked about it beforehand, and we had no idea that that was going to happen. Counsel talked about we are seeking inspections under our writ. We are. Those are pre-litigation inspections. That's what the writ is all about, that we have the right to inspect before the lawsuit is brought. You're saying before the lawsuit is brought by the homeowners. By anybody. That's our position because, and that was my next point, Chapter 116 gives the homeowners association expressly the right to bring and defend litigation on behalf of the homeowners in Nevada. Counsel is right when he says the pinnacle was decided, at least in part, under the Davis-Sterling Act in California, but there were a lot of other reasons for that decision. And, in fact, the provisions of the Davis-Sterling Act and the provisions of Chapter 116 in Nevada are essentially the same. There really is no substantive difference on anything that would matter here. The issue that we're not the declarant was never raised below, and we never got to put in evidence and documents to show that, in fact, we were the successor declarant. And I still don't understand the issue about judgment versus order. Orders are recorded all the time. That seems to be their primary concern. For example, an order expunging a list pendant would be something that would be recorded on a homeowner's title. How else would that have any effect? I want to talk about the standing issue, because I think the homeowners association basically mixes up three things in making the argument they make. They mix up standing with federal court jurisdiction with the homeowners authority to bring suit. And they try to justify their position by a subsequent order issued by the district court in the Waterfall case that they've told you about. The difference, though, is that in Waterfall, the homeowners association was the plaintiff bringing a construction defect case. Here, we're the plaintiffs bringing a declaratory relief case, and standing and jurisdiction depend upon our standing. The Republic Bank case in the Fourth Circuit heard basically the same issue. It was a petition to compel arbitration where standing and jurisdiction were both raised. The court analyzed standing first and talked about, is there an injury in fact? Is there a concrete injury for standing? And in that case, the court found there definitely was. And here, they're not really challenging that. They're not really saying we don't have an injury. And remember, we are moving for two things in our declaratory relief case, to compel pre-litigation inspections and to compel arbitration. And we've certainly been injured. Republic Bank then turns to analyze federal court jurisdiction under the FAA in a complaint to compel arbitration. Here, there's complete diversity. Nobody argues that there isn't. And the issue then is the amount in controversy. And the question really comes down to simply this. Do we have the right to aggregate the individual homeowners' construction defect claims to reach the $75,000 jurisdictional limit? It's irrelevant whether the homeowners' association can bring suit in federal court or has to sue in state court. That has nothing to do with the jurisdiction over our complaint. The case we cited, Lake Haven Mobile Park Association out of Florida, dealt with this exact question. And the district court there aggregated the individual homeowners' claims in finding that there was jurisdiction for the homeowners' association to bring that action against the mobile park owner. It's the same thing here. There really is no difference. The plaintiffs claim that every home is defective and they all have the same defect and that they're entitled to relief on that basis. And that's basically their issue. And as we know, the courts apply the legal certainty test as to whether or not we exceed the $75,000 amount for jurisdiction purposes. One last point. You're over time, so if you can make it efficiently. I will. We don't think Hunt applies at all because Hunt would only apply if we're talking about their jurisdiction, not ours. Thank you. Okay. Thank you very much. I'm now going to read the case numbers so we're clear which one's been argued and which not. We've heard argument in 12-16768, 12-16769. That case is now submitted for decision.
judges: Tashima, Fletcher, Nguyen